UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA RICCOBENE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-10256 PBS |
| | ) |
| MASSACHUSETTS BAY | ) |
| TRANSPORTATION AUTHORITY, | ) |
| and ANNE McCALL, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the Defendants, Massachusetts Bay Transportation Authority ("MBTA") and Anne McCall ("Deputy McCall") (collectively, "Defendants") submit the instant Memorandum of Law In Support of Their Motion for Summary Judgment on all counts of the Plaintiff, Lisa Riccobene's ("Plaintiff") Complaint. For the reasons set forth below, and in the Defendants' Motion for Summary Judgment and the Defendants' Rule 56.1 Statement of Undisputed Material Facts ("SUMF"), filed herewith, the Defendants are entitled to summary judgment in their favor and against the Plaintiff on all counts of the Complaint.

## I. INTRODUCTION

The Plaintiff was employed as a civilian Executive Assistant to former MBTA Police Chief Thomas O'Loughlin, from March, 2001 through November, 2002. The Plaintiff alleges that during the course of her employment, she was subjected to a litany of derogatory communications and conduct motivated by her sex and her national origin (Italian). The Plaintiff

201220.1

alleges that the termination of her employment was in retaliation for her having complained of discriminatory treatment and for having been supportive of civil rights claims made against the MBTA by former Officer Helder Peixoto.  The Plaintiff further claims entitlement to approximately 600 hours worth of overtime pay.

The Plaintiff's discrimination claims are without merit.  During discovery, the Plaintiff offered nothing more than mere conjecture and speculation as to the motivation for any of the incidents or communications that she alleges were discriminatory.  As to the termination of her employment, the evidence demonstrates that the Plaintiff was laid off as part of a reduction in force impacting the entire MBTA.  At the time of the layoff, the Plaintiff had been out of work using accrued compensatory time for several months, ever since the departure of her boss, former Chief O'Loughlin, and had ignored a directive from the Interim Chief, William Fleming ("Deputy Fleming" or "Interim Chief Fleming"), to return to work.  Finally, her claims for overtime pay are barred as the Plaintiff admits to having received and used all of the compensatory time that she earned pursuant to MBTA policy, which policy is in compliance with state and federal overtime laws allowing state agencies to offer compensatory time in lieu of overtime pay.

Thus, summary judgment should enter for the Defendants and against the Plaintiff on all of the Plaintiff's claims.

## II.  PROCEDURAL  HISTORY

On March 4, 2003, the Plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and U.S. Equal Employment Opportunity Commission ("EEOC") naming the MBTA, Deputy McCall and Deputy Fleming as respondents. Upon receipt of the Plaintiff's Charge of Discrimination, the MBTA Department of

2

Organizational Diversity/Civil Rights ("ODCR") initiated a parallel investigation into the Plaintiff's claims.  On June 6, 2003, the ODCR notified the Plaintiff that it had concluded its investigation and that a finding of No Cause had been entered with respect to all of the Plaintiff's claims.  On October 28, 2003, prior to the MCAD's issuing any determination as to probable cause or lack thereof, the Plaintiff notified the MCAD and the EEOC that she was withdrawing her claims from those agencies to pursue her claims in court.  On February 6, 2004, the Plaintiff filed her Complaint in this Court.  SUMF, ¶¶ 2-5.

### III.  UNDISPUTED MATERIAL FACTS

<u>The Plaintiff Is Hired As Chief O'Loughlin's Executive Assistant</u>

The Plaintiff began working for the MBTA Police Department on March 26, 2001 as a civilian Executive Assistant to former Chief Thomas O'Loughlin.  The Plaintiff's duties were largely secretarial and included providing clerical and administrative support to Chief O'Loughlin, screening and prioritizing his calls and correspondence, maintaining his schedule and coordinating meetings.  The Plaintiff's desk was located just outside the Chief's office and she reported directly to him.  The Plaintiff and former Chief O'Loughlin have been "best friend[s]" for the past fifteen (15) years.  They speak on the telephone every day and see each other as often as possible.  Their close relationship preceded the Plaintiff's employment at the MBTA, continuing during her employment at the MBTA, and continues through the present. SUMF, ¶¶ 6-8.

<u>Deputy Anne McCall</u>

Deputy McCall has been employed by the MBTA as a police officer since November 1983.  During her tenure with the Police Department, Deputy McCall served as a patrol officer, detective, detective sergeant, and lieutenant.  In 1997, Chief O'Loughlin appointed her to the

201220.1

command level position of Deputy Chief.[1]  At no time did Deputy McCall have any direct

supervisory authority over the Plaintiff.  SUMF, ¶¶ 11, 13.

### Interim Chief William Fleming

Interim Chief Fleming has also been an MBTA police officer since 1983.  He progressed

through the ranks from patrol officer to detective sergeant then lieutenant.  Former Chief

O'Loughlin appointed him to the position of Deputy Chief.  As Deputy Chief, Fleming was

primarily responsible for commanding the Criminal Investigations Unit of the MBTA Police

Department.  On August 8, 2002, Deputy Fleming was appointed Interim Chief.  SUMF, ¶ 12.

### Chief O'Loughlin Resigns From The MBTA And The Plaintiff Goes Out On Compensatory Time.

At the end of July 2002, Chief O'Loughlin resigned from the MBTA following a

protracted period of tension between the Police Officers and Chief O'Loughlin concerning

contract negotiations and management issues resulting in a vote of no confidence by the Police

Officers.  Within a few days of his departure, the Plaintiff absented herself from work and began

using accrued compensatory time.  On August 8, 2002, Deputy Fleming was appointed Interim

Chief.  In the Plaintiff's absence, Deputy Fleming asked Sharon April, who had been his

administrative assistant while he was Deputy Chief, to perform the functions of Executive

Assistant for him while he served as Interim Chief.   SUMF, ¶¶ 14-15, 47.

In September 2002, Interim Chief Fleming had a telephone conversation with the

Plaintiff wherein she told him that she planned to remain out of work until she had used all of her

compensatory time and, once that was exhausted, would resign her position without ever

returning to work.  Deputy Fleming tried to encourage the Plaintiff to return to work by telling

---

[1] The position of Deputy Chief is not a civil service rank.  Officers of any rank may be appointed to the position.
As Deputy Chief, Lieutenant McCall retained her civil service rank of lieutenant.

her that he hoped to establish a Vandal Squad that would be headed by the Plaintiff's friend, Lieutenant Nancy O'Loughlin, which would operate out of the Quincy Center MBTA station. Those plans, however, did not materialize due to budgetary reasons. As an alternative, Interim Chief Fleming told the Plaintiff that he would assign her to work for Deputy Chief John Mahoney, who had offered to provide work for the Plaintiff. The Plaintiff, however, rejected that assignment. SUMF, ¶¶ 16-18.

In mid-September, Interim Chief Fleming had breakfast with MBTA General Manager Michael Mulhern to discuss how things were going as Interim Chief. Interim Chief Fleming asked Mr. Mulhern if Ms. April could receive a raise as she was performing the duties of Executive Assistant to the Interim Chief. Mr. Mulhern asked what had happened to the existing Executive Assistant (i.e., the Plaintiff) and Interim Chief Fleming advised that she had been out using compensatory time for almost a month. Mr. Mulhern reminded Interim Chief Fleming that such extended compensatory time usage was against MBTA policy, and directed him to contact the Plaintiff and tell her to return to work. SUMF, ¶ 19.

<u>The Plaintiff Ignores Interim Chief Fleming's Directive To Return To Work</u>

On September 26, 2002, Interim Chief Fleming wrote a letter to the Plaintiff in which he told her that compensatory time would have to be taken in conformance with MBTA policy and provided her a copy of the policy, which stated that compensatory time could not exceed "one or two consecutive work days and can never be taken for an entire work week." At the time, the Plaintiff had taken as many as twenty-one (21) consecutive compensatory days off. As such, Interim Chief Fleming ordered the Plaintiff to return to work no later than Monday, September 30, 2002. Despite this directive from the Interim Chief, the Plaintiff did not return to work. SUMF, ¶ 20.

The Plaintiff Is Included In The November, 2002 Layoff

During the fall of 2002, the MBTA faced a severe budgetary shortfall and determined that a reduction in force was necessary.  Only non-union administrative personnel whose layoff would have the least impact on the essential functioning of the MBTA were eligible for the layoff.  MBTA Deputy General Manager, Joan Martin, and outside counsel, John Adkins, met with each MBTA department head, and asked each to identify those persons from each department who met the criteria for inclusion in the layoff.   SUMF, ¶ 21.

To determine whom from the MBTA Police Department would be laid off, Ms. Martin and Attorney Adkins met with Interim Chief Fleming.  While at first reluctant to identify any names to be laid off, Interim Chief Fleming advised that the Plaintiff had been out of the office on compensatory time for several months, that other executive assistants were performing the work of the department, and that the Plaintiff's inclusion in the layoff would have the least impact on the MBTA's provision of essential services.  Ms. Martin understood Interim Chief Fleming's remarks to be his recommendation that the Plaintiff satisfied the criteria for and should be included in the layoff.  SUMF, ¶ 22.

Ms. Martin and Attorney Adkins compiled the names that department heads had recommended to them for inclusion in the layoff and submitted the list, which included the Plaintiff's, to MBTA General Manager Michael Mulhern for approval.  Mr. Mulhern ultimately approved approximately thirty-four (34) names for inclusion in the layoff, including the Plaintiff's.  SUMF, ¶¶ 23-24.

The Plaintiff's Allegations Of Discrimination

The Plaintiff alleges that during the course of her employment, she was subjected to a litany of derogatory communications and conduct motivated by her sex and her national origin

(Italian). The remarks and conduct about which the Plaintiff complains include, among other things, Deputy McCall's allegedly calling the Plaintiff a "Mafia Princess," having her car vandalized, her computer hacked, her cell phone stolen, and derogatory remarks posted about her on the internet and on an MBTA paging system. <u>See</u> Complaint, ¶¶ 11(a) through 11(q) and 12.

During her deposition, the Plaintiff admitted that, except for the single alleged "Mafia Princess" remark, her belief that Deputy McCall was responsible for any of the allegedly discriminatory acts was based on nothing more than pure speculation. SUMF, ¶¶ 35-38, 40-43, 46.

The Plaintiff alleges to have complained to the MBTA about each of the incidents and that the MBTA did not investigate them, but the evidence adduced in discovery shows that the MBTA did, in fact, investigate the Plaintiff's complaints, yet was not able to identify the person(s) responsible. SUMF, ¶¶ 34-35, 37, 40-42, 44.

<u>The Plaintiff's Claim For Overtime Compensation</u>

The Plaintiff alleges to have worked more than six hundred (600) hours of overtime during her one and one-half years of employment at the MBTA. The Plaintiff acknowledges that pursuant to the MBTA's policy, she was eligible to earn compensatory time for the overtime hours that she worked, but was not eligible to receive cash. The Plaintiff acknowledges receiving all of the compensatory time that she was due, and never objected to it or asked for cash. Prior to the termination of her employment, the Plaintiff used all of the compensatory time she had accrued. SUMF, ¶¶ 51-55.

201220.1

## IV.  ARGUMENT

A.      Summary Judgment Standard

An award of summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To demonstrate the existence of a genuine issue of material fact, the party opposing the motion must set forth admissible evidence specific enough to support her allegations.  Gorski v. New Hampshire Dep't. of Corr., 290 F.3d 466, 475-476 (1st Cir. 2002); Fed. R. Civ. P. 56(e).  "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  Quinones v. Houser Buick, 436 F.3d 284, 289 (1st  Cir. 2006) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st  Cir. 1990)).  Accord Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003).

Here, the Plaintiff's claims are based on nothing more than conjecture and speculation, and the undisputed material facts warrant judgment in favor of the MBTA and Deputy McCall and against the Plaintiff on all counts of the Complaint.

B.      The Defendants Are Entitled To Summary Judgment On The Plaintiff's
        Claims For Discrimination On The Basis Of Sex And National Origin.

The Plaintiff alleges that during the course of her employment (March, 2001 through November, 2002), she was subjected to a litany of derogatory communications and conduct concerning her sex and her national origin (Italian).  See Complaint, ¶¶ 11(a) through 11(q) and 12.  As demonstrated below, the Plaintiffs claims must fail as they are based on inadmissible

speculation and conjecture precluding her from establishing a prima facie case of sex or national origin discrimination.

The standards for proving hostile work environment discrimination under federal law (Title VII) and state law (Chapter 151B) are the same. "A plaintiff may recover under a hostile work environment theory when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Andujar v. Nortel, 400 F. Supp. 2d 306, 329 (D. Mass. 2005) (quoting Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005)). See Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 533 (2001) (same). The plaintiff must introduce sufficient evidence to support a finding that her work environment was "objectively and subjectively offensive, one a that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so." Douglas v. J.C. Penney Co., Inc., 474 F.3d 10, 15 (1st Cir. 2007).

Here, the Plaintiff cannot offer any admissible evidence to prove that she was subjected to a hostile work environment on the basis of sex or national origin.

      1.    Mafia Princess

The Plaintiff alleges that on one single occasion, she heard Deputy McCall refer to her as a "Mafia Princess" and that it was rumored that Deputy McCall had used the term on one or two other occasions outside of the Plaintiff's presence. SUMF, ¶ 31. Even if true, which is vehemently contested,[2] the single remark that the Plaintiff alleges to have been subjected to is insufficient to sustain a hostile work environment discrimination claim as it is not severe or pervasive enough to alter the terms and conditions of the Plaintiff's employment. See Ramsdell

9

v. Western Mass. Bus Lines, Inc., 415 Mass. 673, 678-79 (1993) (conduct must be severe and pervasive enough to alter terms and conditions of employment); College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 162 (1987) (same).

As to the rumored remarks, these should not even be considered by this Court as the Plaintiff has no knowledge that they ever occurred and are inadmissible hearsay.  See Quinones v. Houser Buick, 436 F.3d at 290-291 (speculative allegations are inadmissible to defeat summary judgment); Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 32 (1st Cir. 2003) (hearsay may not be considered in summary judgment analysis).   Even if they did occur, the fact that they occurred outside of the Plaintiff's presence at some unknown time and place cannot support any objectively reasonable basis for creating a hostile work environment.  See Douglas v. J.C. Penney Co., Inc., 474 F.3d at 15 (environment must be objectively hostile and abusive).

Moreover, the Plaintiff cannot demonstrate that the term "Mafia Princess" is an objectively derogatory reference to the Plaintiff's gender or national origin or that she subjectively viewed it to be.  The Plaintiff testified at her deposition that she understood the term "princess" to be an allegation that she was not a hard worker, and the term "Mafia" to be an allegation that her parents got what they had in life through illegal means.  SUMF, ¶ 31.  Neither of these even subjective interpretations relates to the Plaintiff's gender or national origin.  The First Circuit has rejected similar allegations as not objectively reasonable.  See Ayala-Gerena v. Bristol Meyers-Squibb Co., 95 F.3d 86, 97 (1st Cir. 1996) (rejecting Puerto Rican plaintiffs' argument that term "black mafia" was a derogatory reference to race or national origin).

---

[2] Not only does Deputy McCall deny making any such statement, the Plaintiff's own written report of the June, 2002 incident between Deputy McCall and Officer Peixoto, and Officer Peixoto's own written report of the same incident, are devoid of any allegation that Deputy McCall used the term "Mafia Princess."   SUMF, ¶¶ 49-50.

2.     Other Alleged Discriminatory Incidents

The Plaintiff alleges that during the course of her employment, her car was vandalized at work, her computer was "hacked", her cell phone was stolen at work, a "threatening note" was placed on her desk at work, and derogatory comments about her were posted on an internet site and published on the MBTA's electronic paging system.  Complaint, ¶¶ 11 (b), (c), (d), (f), (g), (h) and (k).   The Plaintiff's theory that these incidents were motivated by her gender or national origin, or that Deputy McCall or anyone at the MBTA was responsible for them, is based on nothing but pure conjecture and is inadmissible to defeat summary judgment.

In order to make out a claim of hostile work environment discrimination on the basis of sex or national origin, the Plaintiff must introduce evidence that the acts which she claims constituted harassment were done "because of" her sex or national origin.  See 42 U.S.C. § 2000e-2; Mass. Gen. Laws c. 151B, § 4; Gorski v. New Hampshire Dep't. of Corr., 290 F.3d at 471.  Here, the Plaintiff offers not an iota of evidence to suggest that any of the events about which she complains had anything to do with her sex or national origin.

Even the Plaintiff concedes that the motivation for someone allegedly "hacking" into her computer was to discover confidential information that she may have had due to her role as Executive Assistant to the Chief.  SUMF, ¶ 40.  The evidence also suggests that to the extent that she was the victim of any other unprofessional behavior, it was motivated not by her gender or national origin, but due to her close association with then Chief O'Loughlin, who had been issued a vote of no confidence by the patrolmen and ultimately resigned his post.  SUMF, ¶ 47. Thus, the Plaintiff cannot succeed on her claim.  See Rivera-Martinez v. Commonwealth of Puerto Rico, 2007 U.S. App. LEXIS 160, *8 (1st Cir. 2007) (affirming summary judgment for defendants where no evidence that alleged harassment was "because of" gender).

Moreover, the Plaintiff cannot offer any evidence to prove that Deputy McCall or anyone from the MBTA was responsible for any of the incidents to which she was allegedly subjected. The Plaintiff's conjecture and surmise that Deputy McCall or other MBTA employees bear responsibility for these incidents is not admissible to defeat summary judgment. See Quinones v. Houser Buick, 436 F.3d at 290-291 (speculative allegations are inadmissible to defeat summary judgment); Hillstrom v. Best Western TLC Hotel, 354 F.3d at 32 (only admissible evidence may be considered in summary judgment analysis).

Finally, since the Plaintiff cannot establish that any supervisor was responsible for any of the acts about which she complains, she can only establish liability against the MBTA by proving that the MBTA knew about the hostile environment and failed to take prompt action to stop it. Noviello v. City of Boston, 398 F.3d at 95. Here, the evidence shows that the MBTA did, in fact, investigate each of the incidents about which the Plaintiff complained, and took prompt steps to stop it. SUMF, ¶¶ 34-35, 39, 41, 46, 49-50.

Thus, for the above reasons, the Defendants are entitled to summary judgment on the Plaintiff's claims for sex and national origin discrimination (Counts I through IV).

C.     The Defendants Are Entitled To Summary Judgment On The Plaintiff's Claims For Retaliation.

In order to make out a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in protected conduct under Title VII or Chapter 151B and that the alleged retaliator was aware of it; (2) an adverse employment action; and (3) a causal connection between the first two elements. Galvao v. The Gillete Co., 1997 U.S. App. Lexis 21255, *8-9 (1st Cir. 1997); Mole v. University of Mass., 442 Mass. 582, 591-592 (2004). The Plaintiff's claims cannot succeed, however, as she did not engage in protected activity under Chapter 151B or Title VII and, even if

she did, she cannot show any causal nexus between her participation in protected activity and the acts which she alleges were retaliatory.

      1.    <u>The Plaintiff Did Not Engage In Protected Activity</u>.

In order to constitute protected activity, the Plaintiff must either have "opposed any practices" forbidden under Title VII or Chapter 151B (referred to as the "opposition clause") or "filed a complaint, testified or assisted in any proceeding" in the MCAD or EEOC (referred to as the "participation clause"). <u>See</u> Mass. Gen. Laws c. 151B, § 4(4); 42 U.S.C. § 2000e-3. Here, the Plaintiff has done neither.

The only two (2) things that the Plaintiff identifies as constituting protected activity are her submission of a memorandum to Superintendent Komola in July, 2002, concerning alleged "unprofessional behavior" by Deputy McCall towards Officer Peixoto, and the Plaintiff's being interviewed by an MBTA attorney in connection with Officer Peixoto's worker's compensation claim in September, 2002. SUMF, ¶¶ 48-50.

Participation in a worker's compensation hearing is not protected activity under Title VII or Chapter 151B as it is neither opposing practices forbidden by those statutes nor participation in an MCAD or EEOC proceeding concerning those statutes. Any argument that the Plaintiff's memorandum to Superintendent Komola constitutes protected activity as it was part of an internal MBTA investigation will fail as the participation clause only protects participation in MCAD and EEOC proceedings and is inapplicable to internal investigations. <u>Morris v. Boston Edison Co.</u>, 942 F. Supp. 65, 70 (D. Mass. 1996).

The only possible way the Plaintiff could argue that she participated in protected activity is by claiming that her memorandum to Superintendent Komola constituted "opposing practices" forbidden by Title VII or Chapter 151B, but this argument fails on its facts. The Plaintiff admits

that she was ordered by Superintendent Komola to write a report concerning the interaction between Deputy McCall and Officer Peixoto.  In her report, she does not mention anything about discriminatory behavior at all, let alone state any opposition to it.  SUMF, ¶ 49.  Thus, the Plaintiff has not engaged in any protected activity and cannot sustain a claim for retaliation.

<blockquote>

2.      <u>The Plaintiff Cannot Demonstrate Any Causal Nexus Between Her Protected Activity And Any Adverse Job Action</u>.

</blockquote>

The Plaintiff alleges that Deputy McCall retaliated against her by including her in the November, 2002 layoff and by preventing her from obtaining jobs both within and outside of the MBTA.  In support of her claims, the Plaintiff offers nothing more than pure speculation which is insufficient to defeat summary judgment.  <u>See</u> <u>Quinones v. Houser Buick</u>, 436 F.3d at 290-291 (speculation insufficient to defeat summary judgment).

The Plaintiff alleges that in the late summer or early fall, 2002, former Chief O'Loughlin told her that Ms. Martin's administrative assistant was either leaving or going on maternity leave, and that the Plaintiff might be able to obtain that position.  SUMF, ¶ 56.  The Plaintiff theorizes that the reason she did not get the position was that Deputy McCall must have done something to prevent it.  The Plaintiff acknowledges, however, that she has no evidence whatsoever to support this theory.  SUMF, ¶ 59.

The Plaintiff further alleges that following the termination of her employment with the MBTA, she applied for a position with the Boston Police Department that she did not get.  Once again, the Plaintiff relies on nothing but conjecture to support her theory that Deputy McCall played a role in preventing the Plaintiff from getting this job.  SUMF, ¶ 59.

The Plaintiff's theory that Deputy McCall had something to do with her inclusion in the November, 2002 layoff is similarly without any support whatsoever.  The undisputed evidence

14

demonstrates that Ms. Martin and Attorney Adkins met with Interim Chief Fleming who advised them that the Plaintiff had been out of the office on compensatory time for several months, she did not plan to return, and that other executive assistants were performing the work of the department.  Ms. Martin understood Interim Chief Fleming's remarks to be his recommendation that the Plaintiff be included in the layoff and included her name on the list.  SUMF, ¶¶ 21-22.

Ms. Martin and Attorney Adkins compiled the names that department heads had recommended to them for inclusion in the layoff and submitted the list, which included the Plaintiff's, to MBTA General Manager Michael Mulhern for approval.  Mr. Mulhern ultimately approved approximately thirty-four (34) names for inclusion in the layoff, including the Plaintiff's.  Thus, the decision to include the Plaintiff in the layoff was made by a combination of Interim Chief Fleming, Ms. Martin, and Mr. Mulhern.  SUMF, ¶ 23.

The Plaintiff's theory that Deputy McCall somehow played a behind- the-scenes role in the Plaintiff's inclusion in the layoff (i.e., cat's paw theory) is based on nothing but pure speculation and is insufficient to taint the MBTA's independent decisionmaking process concerning whom to include in the layoff.  See Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 79 (1st Cir. 2004) (discriminatory animus of co-worker may be imputed to independent decisionmaker only where misleading information has been provided or relevant information concealed).  Here, there is no evidence whatsoever that Deputy McCall had any communication with any of these decisionmakers concerning the Plaintiff.  In fact, the evidence is that Deputy McCall did not even know about the Plaintiff's inclusion in the layoff until after it had occurred.  SUMF, ¶ 25.

Interim Chief Fleming's testimony that he did not make the decision to include the Plaintiff in the layoff does not create a disputed issue of material fact on this claim.  Interim

201220.1

Chief Fleming acknowledges having spoken to Ms. Martin and Mr. Adkins, acknowledges having told them that the Plaintiff had been out on compensatory time and did not plan to return, and that others were performing her job functions.   SUMF, ¶ 22.  It is undisputed that Ms. Martin understood Interim Chief's Flemings remarks to be his recommendation that the Plaintiff be included in the layoff.  SUMF, ¶¶ 21-22.  It is undisputed that the decision about who to include in the layoff ultimately rested with Mr. Mulhern.  Thus, Interim Chief Fleming's remark does not provide any evidence to suggest that the MBTA's reason for including the Plaintiff in the layoff was a pretext.  SUMF, ¶ 23.

Thus, the Defendants are entitled to summary judgment on the Plaintiff's claims for retaliation (Counts V and VI).

> D.     The Plaintiff's Claims Against Deputy McCall, Individually, For
>        Violation Of Title VII Must Be Dismissed As Title VII Does Not Impose
>        Individual Liability.

While the First Circuit has not yet ruled on the issue, "[e]ach of the eleven other circuits has asserted that individual employees, agents, and/or supervisors are not liable under Title VII." Healy v. Henderson, 275 F. Supp. 2d 40, 45 (D. Mass. 2003) (dismissing Title VII claims against individual defendants and collecting cases).  The majority of District Courts within the First Circuit have reached the same conclusion.  Id.  See, e.g., Cummings v. Pearson Education, Inc., 2006 U.S. Dist. Lexis 2118, * 19-22 (D. Mass. 2006) ("I find no reason to depart from the weight of authority on this issue."); Simon v. Fed. Prison Indus., Inc., 2003 U.S. Dist. LEXIS 27268 (D. Mass. 2003) ("most courts have held that individual defendants are not liable under Title VII in their personal capacities"); Szabo v. Trustees of Boston Univ., 1998 U.S. Dist. LEXIS 4104 (D. Mass. 1998) ("There is no reason to rehearse the examination of the issue that has been carefully set forth in other cases. . . .  This Court agrees with the majority of courts that have considered

the issue and concludes that Title VII does not allow for individual liability of employee

managers); Danio v. Emerson College, 963 F. Supp. 61, 62 (D. Mass. 1997) (dismissing Title

VII claims against individual defendants); Herrera v. Boyd Coating Research Co., 983 F. Supp.

49 (D. Mass. 1997) (refusing to impose Title VII liability on individual defendants); Chatman v.

Gentle Dental Ctr., 973 F. Supp. 228 (D. Mass. 1997).

As such, in addition to other reasons set forth in Sections B and C, above, the Plaintiff's

claims against Deputy McCall, individually, for violation of Title VII (Counts II, IV and VI)

must be dismissed.

E.    The Plaintiff Cannot Succeed On Her Claims Against Deputy McCall
       Under Mass. Gen. Laws c. 12, § 11I or Section 1983.

The Plaintiff's claim for violation of Mass. Gen. Laws c. 12, §11I is based on the same

facts and circumstances as her claims for sex and gender discrimination under Chapter 151B. As

such, her claims are barred as Chapter 151B preempts Mass. Gen. Laws c. 12, § 11I. Carmack v.

National Railroad Passenger Corp., 486 F. Supp. 2d 58, 78-79 (D. Mass. 2007). To the extent

that the Plaintiff alleges that Deputy McCall somehow caused the termination of the Plaintiff's

employment (which she cannot prove), such a claim cannot be a violation of § 11I as the Plaintiff

had no secured right in her at-will employment. Webster v. Motorola, 418 Mass. 425, 430

(1994). Moreover, in order to prove a violation of the Massachusetts Civil Rights statute, the

Plaintiff must demonstrate that she was subjected to "threats, intimidation or coercion." While

the Complaint alleges that the Plaintiff received a threatening note, she conceded in her

deposition that she found the note insulting to her character but not a threat to her physical

safety. SUMF, ¶ 43.

The Plaintiff's Section 1983 claim against Deputy McCall must also fail. Of all the

things that allegedly befell the Plaintiff during her employment at the MBTA, the one and only

piece of admissible evidence concerning Deputy McCall is the Plaintiff's allegation that Deputy

McCall referred to the Plaintiff as a "Mafia Princess" on one single occasion. As such an act,

even if true, is insufficient to constitute discrimination, it cannot be considered a deprivation of

any Constitutional right. Moreover, the Plaintiff cannot sustain a Section 1983 claim against

Deputy McCall as any acts that she engaged in with respect to the Plaintiff do not constitute

acting "under color of law" for purposes of Section 1983 liability. See Martinez v. Colon, 54

F.3d 980, 986-988 (1st Cir. 1995) (though on duty and in uniform, a police officer's personal

harassment of another individual was for purely personal reasons and did not constitute action

under color of law).

Thus, Defendant McCall is entitled to summary judgment on these claims (Counts VII

and VIII).

> F.    The Defendant MBTA Is Entitled To Summary Judgment On The
>        Plaintiff's Claims For Overtime Compensation.

The Plaintiff alleges that she is entitled to payment of overtime at a rate of 1 ½ times her

regular rate of pay for approximately 600 hours that she worked overtime during the course of

her employment. The Plaintiff conceded during her deposition that she received compensatory

time for all of the hours she worked overtime, pursuant to the MBTA's written policy, and

further admitted that she used all of the compensatory time she had accrued. Nevertheless, she

asserts that she should have been given a choice to receive pay in lieu of compensatory time, and

now is entitled to payment. Her claim is without merit.

Under the Fair Labor Standards Act, a public agency is permitted to offer compensatory

time in lieu of overtime provided that there is an agreement or understanding between the

employer and employee concerning same. 42 U.S.C. § 207(o). The MBTA qualifies as a public

agency for purposes of this rule. Mass. Gen. Laws c. 161A, § 2; see also MBTA v. MBTA

Retirement Board, 397 Mass. 734, 737 (1986). Pursuant to the applicable regulations, an

"agreement" will be presumed to exist with respect to any employee who accepts compensatory

time in lieu overtime pay and does not demand cash or object to same. 29 C.F.R. § 553.23. It is

undisputed that the Plaintiff accepted compensatory time in lieu of cash, without objection,

throughout her employment at the MBTA. SUMF, ¶¶ 52-55. Thus, she is deemed to have

agreed to it, and cannot now raise a claim that she did not. 29 C.F.R. § 553.23. Moreover, the

Plaintiff admits that she used all of her compensatory time, and has therefore suffered no

damages. SUMF, ¶ 53.

The Plaintiff's state law claim for overtime under Chapter 151 must also fail as that

statute is inapplicable to state employees. The overtime statute applicable to state employees is

Mass. Gen. Laws c. 149, §30B, which specifically exempts "heads of departments and divisions

and their deputies and assistants, confidential secretaries" from overtime pay. The Plaintiff was

the Executive Assistant to Chief O'Loughlin, who was a department head. As such, the Plaintiff

is not entitled to overtime under the Massachusetts statute.

Thus, the Defendant is entitled to summary judgment on the Plaintiff's claims for

overtime compensation (Count IX)

## IV.  CONCLUSION

For all the above reasons, the Defendants' Motion for Summary Judgment on all counts

of the Complaint should be ALLOWED.

201220.1

Respectfully submitted,


MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY and ANNE McCALL,

By their Attorneys,

*/s/ Jeffrey A. Dretler*

_____
Walter B. Prince (BBO #406640)
Jeffrey A. Dretler (BBO #558953)
Prince, Lobel, Glovsky & Tye LLP
100 Cambridge Street, Suite 2200
Boston, MA  02114
(617) 456-8000