UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04-10256-PBS

---

LISA RICCOBENE
*Plaintiff*

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY
and
ANNE McCALL
*Defendants*

---

**PLAINTIFF'S STATEMENT PURSUANT TO LOCAL RULE 56.1
OF MATERIAL FACTS OF RECORD
AS TO WHICH THERE EXISTS A GENUINE ISSUE TO BE TRIED**

Pursuant to Local Rule 56.1, Plaintiff Lisa Riccobene submits this concise statement of material facts of record as to which it is contended that there exists a genuine issue to be tried.

Due to the extensive Statement of Facts set forth in the Summary Judgment Motion filed by Defendants as well as the fact that Plaintiff does not disagree with many of the statements of fact set forth in the Rule 56 Statement submitted by Defendant, Plaintiff only sets forth herein those facts which are either not touched upon by the Defendants in their Statement or which are contrary to the factual statements set forth by Defendants.

**I.      MBTA Acting Chief of Police William Flemming admitted that the selection of Lisa Riccobene for layoff was retaliatory.**

     A.      During the deposition of former MBTA Chief of Police Thomas O'Loughlin, former Chief O'Loughlin testified that he had been informed by Acting Chief Flemming that Acting Chief Flemming stated to Joan Martin and Michael Mulhern words to the

1

effect that the layoff of Ms. Riccobene was wrong, that Ms. Riccobene had seniority and that her layoff would be viewed as retaliation. Chief Flemming used the word retaliation when speaking with Chief O'Loughlin. It was Chief O'Loughlin's understanding that Chief Flemming was referring to Ms. Riccobene's involvement in the Piexoto matters as the reason for the retaliation. See Exhibit 1, excerpts of Deposition of Thomas O'Loughlin at 87.

**II.    All of the MBTA management officials who might have been the individual who selected Lisa Riccobene for layoff, namely Chief Flemming, Joan Martin and General Manager Michael Mulhern, have denied being the individual who actually selected Ms. Riccobene for layoff and have identified one or more of the others of these three people as being the person who selected Ms. Riccobene for layoff.**

A.    Chief Flemming has denied that he was the person who decided to select Ms. Riccobene for layoff. He has testified that he never recommended that Ms. Riccobene be laid off, and he has stated that he has no idea who actually made the decision to place Ms. Riccobene's name on a Layoff List. See Exhibit 2, excerpts of Deposition of William Flemming at 75, 77. Chief Flemming stated that he played no role in the decision to select Lisa Riccobene for layoff and he has no idea who selected her. Id. at 99. Chief Flemming has testified that he was not asked who he thought should be laid off if there had to be a layoff. Id. at 100. In Chief Flemming's opinion, it would have made more sense to subject one of the "greeters" at the MBTA Police Department to a layoff rather than Ms. Riccobene. Id. at 110. Chief Flemming told Joan Martin and the consultants he met with that there were two other employees who had less seniority than Ms. Riccobene. Id. at 64.

B.    Michael Mulhern testified that he played no role in deciding who would be on the Layoff List but that it would have been Chief Flemming who selected Ms. Riccobene's position for elimination. See Exhibit 3, excerpts of Deposition of Michael Mulhern at 9-10. Mr. Mulhern also testified that Joan Martin did not decide who would be on the Layoff List. Mr. Mulhern testified that he had approved the selection of Lisa Riccobene

2

for layoff based upon his belief that she had been selected for layoff by Chief Flemming. Id. at 12.

C.  Joan Martin testified that she had discussed the upcoming layoff with Chief Flemming and that he (Chief Flemming) gave her Lisa Riccobene's name for selection. See Exhibit 4, excerpts of Deposition of Joan Martin at 17. Ms. Martin specifically testified that it was Chief Flemming who recommended Lisa Riccobene for layoff. Id. at 20-21. Ms. Martin denied that she was the one who recommended that Ms. Riccobene be selected for layoff. Id. at 20.

### III.  Chief Flemming informed both Michael Mulhern and Joan Martin that Lisa Riccobene was not at work because she believed she was being harassed, but neither Mr. Mulhern nor Ms. Martin commented about that statement or asked anything about it, despite the nature of their obligations and responsibilities as MBTA management officials.

A.  Chief Flemming testified that when he met with a consultant and Joan Martin to discuss the selection of individuals for layoff, he stated to the consultant and Joan Martin that Lisa Riccobene was absent from work because she believed she was being harassed. However, neither the consultant nor Ms. Martin asked Chief Flemming any questions about that. See Exhibit 2, excerpts of Deposition of William Flemming at 61 and 100. Prior to the selection of employees for layoff, when Chief Flemming met with General Manager Michael Mulhern and Lisa Riccobene's name came up, Chief Flemming stated to Michael Mulhern that Ms. Riccobene believed she was being harassed and was not coming into work. Mr. Mulhern did not ask anything about that statement. Id. at 83. It was Chief Flemming's belief when he told Joan Martin that Lisa Riccobene believed she was being harassed, that Joan Martin said she knew about it. Id. at 100.

B.  Joan Martin testified that she did not recall Chief Flemming stating that Lisa Riccobene was not at work because she felt she was being harassed. However, given Ms. Martin's position with the MBTA, this is something that she would recall if it had been

3

said, and something she would have acted upon had it been said. See Exhibit 4, excerpts of Deposition of Joan Martin at 23-24.

**IV. Lisa Riccobene was denied a job with the Boston Police Department, due to the MBTA informing the Boston Police Department that Lisa Riccobene had a lawsuit pending against it.**

    A.    Former MBTA Chief of Police Thomas O'Loughlin contacted the Personnel Department of the Boston Police Department to determine the status of Lisa Riccobene's application for a job with the Boston Police Department. In response he was asked if he "knew she was suing the MBTA." See Exhibit 1, excerpts of Deposition of Thomas O'Loughlin at 98.

    B.    After Ms. Riccobene applied for a job with the Boston Police Department, she was called by the Boston Police Department and asked, "do you know that you have a lawsuit going at the MBTA." See Exhibit 5, excerpts of Deposition of Lisa Riccobene at 245.

**V.    Miscellaneous factual statements.**

    A.    Prior to Ms. Riccobene's selection for layoff, Chief Flemming stated to Ms. Riccobene that he could not keep her safe. Ms. Riccobene understood this to mean that Chief Flemming could not care for her physical safety. See Exhibit 5, excerpts of Deposition of Lisa Riccobene at 83-85.

    B.    Ann McCall was cold to Ms. Riccobene because Ms. Riccobene was Italian. Ms. McCall called Ms. Riccobene a Mafia Princess. See attached excerpts of Deposition of Lisa Riccobene at 108. Ms. Riccobene considered the term "Mafia Princess" to be derogatory, to be "derogatory to [her] ethnicity." See Exhibit 5, excerpts of Deposition of Lisa Riccobene at 110. At other times Deputy Chief McCall referred to Ms. Riccobene as a "fucking secretary." See Charge of Discrimination at ¶1, which is appended to Defendants' Rule 56.1 Exhibit List at Exhibit 1.

4

C. Although Deputy McCall had no supervisory responsibility for Ms. Riccobene, after Ms. Riccobene submitted a statement about an incident between Officer Piexoto and Deputy McCall, Deputy McCall started examining Ms. Riccobene's timesheet. Id.; See Exhibit 5, excerpts of Deposition of Lisa Riccobene at 125-126.

D. Ms. Riccobene was witness to an incident between Deputy McCall and Patrolman Piexoto, at which Deputy McCall made a quacking sound and referred to Officer Piexoto, who was of Portugese ancestry, as a "portugoose." See Exhibit 5, excerpts of Deposition of Lisa Riccobene at 112. Ms. Riccobene wrote a report which she submitted about this incident. Id. at 117.

E. Deputy McCall would ask all of the employees in her area to lunch except for Ms. Riccobene. Id. at 125-126.

F. Ms. Riccobene claims that she is entitled to 640 hours of overtime for which she was not paid. Id. at 293.

Respectfully submitted,
LISA RICCOBENE
By her Attorney,

/s/ Mitchell J. Notis

_____
Mitchell J. Notis, BBO # 374360
LAW OFFICES OF MITCHELL J. NOTIS
370 Washington Street
Brookline, MA 02445

**CERTIFICATE OF SERVICE**

I, Mitchell J. Notis, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to any non-registered participants as indicated in the Notice of Electronic Filing, this 16th day of November, 2007.

/s/Mitchell J. Notis

_____
MITCHELL J. NOTIS, BBO# 374360
Law Office of Mitchell J. Notis
370 Washington Street
Brookline, MA 02445
Tel: 617-566-2700

5